WILLIAM H. DENT v. LOUISE M. MATTESON and Others.[1]

December 21, 1897.

Nos. 10,702—(166).

**National Bank—Death of Shareholder—Insolvency of Bank—Action against Stockholders—Liability of Distributees.**

A stockholder of a national bank, who held ten shares of its stock, died. His estate was administered upon, and the assets, including said stock, were distributed to his widow, heirs, and next of kin, but the stock was never transferred on the books of the bank to either the administrator or the distributees. Thereafter the bank became insolvent, and the comptroller of the currency appointed a receiver for it, and made an assessment on its stockholders, under R. S. (U. S.) § 5151, to pay its debts. In an action by the receiver against said distributees to recover of them the amount of said assessment on said ten shares, *held*, the claim was a contingent one, which did not become absolute until the bank had become insolvent, and, as this was after the time to file claims against the estate had expired, this action can be maintained, under G. S. 1894,.c. 77, against the distributees, to recover to the extent of assets received by them, notwithstanding the provisions of R. S. (U. S.) § 5152.

Action in the district court for Ramsey county by the receiver of the insolvent First National Bank of Decorah, Iowa, to recover one thousand dollars from the widow and heirs of Sumner W. Matteson, deceased, who in his lifetime owned ten shares of stock in that bank. The material facts are stated in the opinion. Defendants demurred to the complaint. From an order overruling the demurrer, Willis, J., two of the defendants appealed. Affirmed.

*Edmund S. Durment,* for appellants.

The action can be maintained only to recover on a liability of the ancestor or of his administrator. G. S. 1894, §§ 5918, 5924. The liability attaches to and follows the stock. It necessarily follows from the federal statute and from the fact of the comptroller's determination being conclusive that an assessment is necessary, that those only are liable who are shareholders at the time of the insolvency. Irons v. Manufacturers, 21 Fed. 197; Aspinwall v. Butler,

[1] Reported in 73 N. W. 416.

133 U. S. 595, 609; Morawetz, Corp. (1st Ed.) § 614. The defendants were shareholders at the time the bank became insolvent, and had been so for more than six months. Schmidt v. Stark, 61 Minn. 91. Even in case that one who owns the stock at the time the debts are incurred is liable, if there is no allegation that the debts were incurred prior to the time defendants became owners, the complaint would be bad. Witters v. Sowles, 32 Fed. 130.

*O'Reilly & Burns* and *D. W. Lawler*, for respondent.

The action is brought primarily under G. S. 1894, c. 77, §§ 5918 to 5925, inclusive, following the cases of Hantzch v. Massolt, 61 Minn. 361; Lake Phalen v. Lindeke, 66 Minn. 209. Deceased owned and held these ten shares of stock ever since October, 1864, and as such owner was liable for its debts to the extent of his stock at par in addition to his actual investment. R. S. (U. S.) § 5151; Richmond v. Irons, 121 U. S. 27; 3 Thompson, Corp. §§ 3018, 3320; Flash v. Conn., 109 U. S. 371; Wiles v. Suydam, 64 N. Y. 173; Cochran v. Weichers, 119 N. Y. 399; Bailey v. Hollister, 26 N. Y. 112; Lowry v. Inman, 46 N. Y. 119; Aultman's Appeal, 98 Pa. St. 505. A stockholder's liability was an essential element of the contract by which he became a stockholder. Hantzch v. Massolt, supra; Oswald v. Pillsbury, 61 Minn. 520; McKeen v. Waldron, 25 Minn. 466; Lake Phalen v. Lindeke, supra; Sargent v. Kimball, 37 Vt. 320. A suit to enforce the stockholders' liability cannot be maintained until the insolvency of the banking association, the appointment of a receiver, the comptroller has determined that it is necessary to enforce the liability of the stockholders and has levied an assessment. Young v. Wempe, 46 Fed. 354; National v. Case, 99 U. S. 628. The claim is one that survives against the estate of the deceased. Richmond v. Irons, supra; Cook, Stockh. § 248; 3 Thompson, Corp. §§ 3020, 3026; Bailey v. Hollister, supra; Cochran v. Weichers, supra; Wickham v. Hull, 60 Fed. 326; Parker v. Robinson, 18 C. C. A. 36.

The plaintiff's claim did not become absolute until after the time limited for presenting claims against the estate of the deceased had expired, and the estate had been distributed. This action is not barred by the failure of plaintiff so to file his claim for allow-

ance.  Hantzch v. Massolt, supra;  Lake Phalen v. Lindeke, supra; McKeen v. Waldron, supra.  The assessment levied under the direction of the comptroller could not be final as deciding the liability of intestate's estate, though frequently so declared by the United States courts.  Young v. Wempe, supra;  National v. Case, supra. The two requisites of a contingent liability called for in Witters v. Sowles, ownership of the stock and creation of a liability by the bank, together, exist in this case.  R. S. (U. S.) § 5139;  Richmond v. Irons, supra.  Until a transfer of stock is duly recorded in the transfer books of a corporation the transferror is not released from liability, but is still held liable to creditors of the corporation. Cook, Stockh. §§ 258, 262;  3 Thompson, Corp. §§ 3193, 3282;  Price v. Whitney, 28 Fed. 297;  Richmond v. Irons, supra;  Hawkins v. Glenn, 131 U. S. 319;  Bowdell v. Farmers, 2 Brown, N. B. C. 146; Johnston v. Laflin, 103 U. S. 800;  Borland v. Haven, 37 Fed. 394; Irons v. Manufacturers, 27 Fed. 591;  Shellington' v. Howland, 53 N. Y. 371.  Upon the death of the testator, or intestate, his estate succeeds him, not only in the title to the stock, but also in the liabilities arising therefrom.  R. S. (U. S.) § 5152;  Bailey v. Hollister, supra;  Price v. Whitney, supra;  Johnston v. Laflin, supra.

Even if the distributive shares of the estate of the intestate cannot be followed into the hands of the defendants, the complaint states facts sufficient to hold defendants as owners of the stock, in that it sets forth ownership by Matteson, his death, probate of his estate, and the final decree distributing the estate, including these shares of stock, to the defendants.  G. S. 1894, §§ 5131, 5413;  Farmer v. Crosby, 43 Minn. 459;  First Div. v. Rice, 25 Minn. 278;  Cowley v. Davidson, 10 Minn. 314 (392);  Connor v. Board, 10 Minn. 352 (439); Lockwood v. Bigelow, 11 Minn. 70 (113);  Metzer v. Baldwin, 11 Minn. 92 (150);  Seibert v. Minneapolis, 58 Minn. 39.

CANTY, J.

Sumner W. Matteson died intestate July 22, 1895, and at the time of his death he was the owner of ten shares of the capital stock of the First National Bank of Decorah, Iowa.  He was a resident of this state, and letters of administration on his estate were issued by the probate court August 5.  Thereafter on September 3,

1895, the time to file claims was limited to six months from that date. The time expired, and thereafter on April 27, 1896, the probate court made its final decree distributing all of the estate, including these ten shares of stock, to the widow and children of the deceased, who are the defendants herein,—an undivided one-third to the widow, and an undivided one-ninth to each of the six children,—and the estate so distributed was of the value of $100,000. Thereafter on November 10, 1896, the bank became insolvent, and was closed by the comptroller of the currency. On November 24 the plaintiff was appointed receiver by the comptroller, who thereafter on January 11, 1897, made an assessment and requisition on each of the stockholders of the bank who was such November 10, 1896, to pay, on or before February 11, 1897, the face value of his stock, and authorized and directed the receiver to collect and receive the amounts due on such assessment. The face value of each share of the stock is $100, and the ten shares so held by the deceased at the time of his death have always been registered in his name on the books of the bank and have never been transferred on those books to these defendants. This action is brought to recover one-third of the amount of the assessment on these ten shares from the widow and one-ninth of said amount from each of the other defendants. To the complaint, which alleges all of the foregoing facts, the defendants demurred on the ground that it does not state a cause of action, and appeal from an order overruling the demurrer.

It will be observed that the bank did not fail until nearly sixteen months after the death of the deceased, eight months after the time to file claims against his estate had expired and six months after the estate was distributed. The claim here in question was a contingent claim, which did not become absolute until after the time to file claims had expired, and the estate was distributed to the widow, heirs, and next of kin. Under these circumstances the plaintiff may maintain an action under G. S. 1894, c. 77, against the distributees, to recover of them the amount of the liability, not exceeding the amount of the distributive share received by each. Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069; Lake Phelan v. Lindeke, 66 Minn. 209, 68 N. W. 174.

Appellant contends that the comptroller's assessment must be against those who were shareholders at the time the bank failed; that the deceased was not then a shareholder, because he had been dead sixteen months; that the administrator was not a shareholder, because the estate had been distributed and the administrator discharged; that the suit is not against these defendants as shareholders, but as distributees under chapter 77; and that, even if the suit was against them as shareholders, it could not be maintained, because it does not appear that at the time of the failure of the bank they still owned the stock. If the law is as appellant contends, it is very easy to evade all liability after the stockholder's death by simply administering the rest of his estate, distributing all the assets arising from the same, discharging the executor or administrator and neglecting to make any disposition whatever of the stock. In the meantime the estate may have received dividends on the stock; so that, according to counsel's theory, it may receive all the benefits and escape all the burdens connected with the stock.

We cannot hold that such is the law. Section 5151, R. S. (U. S.) provides:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Section 5152 provides:

"Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust-funds would be, if living and competent to act and hold the stock in his own name."

In Parker v. Robinson, 18 C. C. A. 36, 71 Fed. 256, it was held that judgment may be taken on the comptroller's assessment against the executor who had inventoried the stock in the probate court; that by virtue of said section 5151 such an executor becomes the stockholder, but that by virtue of section 5152 the judgment can only be enforced against the assets of the estate in his hands. It seems to

us that section 5152 is merely declaratory of what the courts would have held without the aid of that section, except that in the federal courts it may in some cases have an effect in determining whether an action at law or a bill in equity should be brought against the executor. See Witters v. Sowles, 32 Fed. 130. But that question of practice will not arise under our procedure. Then we cannot hold that the liability of the administrator and the distributees in such a case as the one at bar would be any different if section 5152 had never existed. Of course, the result must be worked out in the state courts by a procedure differing materially from that in use in the federal courts.

We are clearly of the opinion that, as a general rule, the statutory or constitutional double liability of a stockholder survives his death, whether the corporate indebtedness was incurred before or after his death, and whether the corporation becomes insolvent before or after his death. One of the very objects of organizing corporations is to prevent the death of any of its members from interfering with the business or affairs of the concern. The stockholder's contract does not contemplate a hiatus in liability resulting from his death. Whether he is living or dead, there may be no assets out of which the liability can be satisfied. But the liability contracted for by the stockholder does not terminate with his death. His is a continuing contract. He contracts for a liability which is to continue, at least, until his stock is transferred to another on the books of the company, or until such a transfer is rightfully demanded.

We are also of the opinion that section 5152 has not changed these rules as applied to the stockholders of national banks. So far as what is here said is inconsistent with certain dicta in Witters v. Sowles, supra, we are not disposed to follow that case, and do not believe that the federal court or courts of last resort will do so.

The order appealed from is therefore affirmed.